# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 20-213V
UNPUBLISHED

| | |
|---|---|
| ROBERT CLENDANIEL, | Chief Special Master Corcoran |
| Petitioner, | Filed: August 18, 2021 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Special Processing Unit (SPU); Entitlement to Compensation; Ruling on the Record; Findings of Fact; Onset;  Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |
| Respondent. | |

*Maximillian J. Muller, Muller Brazil, LLP, Dresher, PA, for petitioner.*

*Althea Walker Davis, U.S. Department of Justice, Washington, DC, for respondent.*

### RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[1]

On February 26, 2020, Robert Clendaniel filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on October 8, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below I find that Petitioner is entitled to compensation, and I award damages in the amount $60,000.00, representing compensation for actual pain and suffering.

## I.       Relevant Procedural History

Shortly after the claim's initiation, Petitioner filed a statement of completion on February 28, 2020. ECF No. 7. Petitioner filed additional records and an amended statement of completion on June 1, 2020. ECF Nos. 13, 14.

On July 31, 2020, Respondent filed a status report stating that a preliminary review of the case did not identify any missing records. ECF No. 15.[3] Respondent did, however, identify some factual and legal issues that might require additional development, including questions regarding the onset of Petitioner's injury.

During a status conference on September 11, 2020, my initial views regarding this claim were shared with the parties. I deemed it appropriate for this case to remain in the SPU at this time, given that onset issues in other similar cases comparable to this matter had frequently been decided in favor of petitioners. ECF No. 16.

On February 18, 2021, Respondent filed a status report anticipating that he could provide his position in this case in approximately twelve weeks. ECF No. 23. I issued a scheduling order permitting Petitioner to seek a motion for a ruling on the record, reasoning that waiting an additional twelve weeks (more than a year from the date the matter was activated after its release from pre-assignment review on March 4, 2020) would not be productive. ECF No. 24.

Petitioner filed the anticipated Motion for a Ruling on the Record on March 25, 2021. Petitioner's Motion for a Ruling on the Record ("Mot."), ECF No. 25. Petitioner argued that he could meet the table definition of a SIRVA, and also requested an award of $80,000.00 for pain and suffering.

Respondent filed his response on June 21, 2021. Respondent's Response to Petitioner's Motion for a Ruling on the Record ("Opp."), ECF No. 32. Respondent argued in part that Petitioner had failed to establish a Table claim because he could not establish that onset of his shoulder pain was within 48 hours of his vaccine, and that the record revealed his pain was not limited to his left shoulder. Res. at 5-6.[4] Respondent also

---

[3] Counsel also requested that Petitioner provide updated records after June of 2019, including physical therapy and/or steroid injections. ECF No. 15 at 1.

[4] Respondent also argues that Petitioner has not established causation-in-fact. Res. at 12-13.

proposed an award of $38,000.00 for pain and suffering if entitlement was found in favor of Petitioner.

Petitioner filed a reply on July 1, 2021, addressing Respondent's arguments regarding the potential damages in this case. Petitioner's Reply to Respondent's Response to Motion for Ruling on the Record ("Reply"), ECF No. 34. This matter is now ripe for resolution.

## II.     Petitioner's Medical Records

Petitioner received the flu vaccine on October 8, 2018, in his left shoulder. Ex. 1 at 5. At that time, Petitioner had a history of chronic lumbar and thoracic pain, and a diagnosis of a S1 radiculopathy. Ex. 4 at 9.

On November 2, 2018 (less than a month after vaccination), Petitioner presented to Dr. Adam Zucconi with complaints of left shoulder pain. Ex. 2 at 13-15. Petitioner stated his shoulder "has been a problem for the last two weeks following a flu vaccine." *Id.* at 14. Dr. Zucconi also noted "[f]lu vaccine was given in his shoulder joint . . . she stated to him it is common to hit the bone…." *Id.*[5] He reported his pain as eight out of ten, with numbness, tingling, burning, throbbing, and poor range of motion. *Id.* He was diagnosed with possible impingement and received a steroid injection. *Id.* at 15. An x-ray on November 6, 2018 was unremarkable. *Id.* at 48.

Petitioner next saw Dr. Zucconi on February 5, 2019, to follow-up regarding his left shoulder pain. Ex. 2 at 10-12. Petitioner reported the previous injection gave him "great relief for about two months." *Id.* at 12. However, at that time, his pain was seven out of ten. *Id.* Petitioner also reported that he was taking anti-inflammatory medication and doing exercises at home. He was diagnosed with a left rotator cuff tear and it was recommended he get an MRI. *Id.* at 13. Later that month, Petitioner underwent an MRI that revealed no evidence of a rotator cuff tear, but mild tendinosis and bursitis. *Id.* at 47.

On April 30, 2019, Petitioner had another follow-up visit for his shoulder pain, this time with nurse practitioner William McLean. Ex. 2 at 8-9. Petitioner now reported that he was unable to lift his arm above his head, and his pain also extended down his arm. *Id.* at 9. The record states that Petitioner's pain "[m]ay have been from a flu injection in bursal area." *Id.* Petitioner was diagnosed with bursitis and underwent arthrocentesis. *Id.* at 10.

---

[5] Petitioner explained in his affidavit that the nurse who administered the vaccine "stated… 'sometimes with older people you hit the bone and that's ok'." Ex. 6 at 1.

3

Petitioner reported to William McLean that he "recently began to feel pain again" on June 28, 2019. Ex. 2 at 7. He underwent a second arthrocentesis procedure on that date. *Id.* at 8. His last visit for left shoulder pain was on December 23, 2019. Ex. 7 at 29-31. At that time, Petitioner reported he continued to have some shoulder pain but "has been controlling it with ibuprofen." *Id.* at 30. He was assessed with minor "left shoulder pain/bursitis".

### III.    Affidavit Evidence

Petitioner filed an affidavit in support of his claim. Ex. 6. In it, he states that the vaccination on October 8, 2018 "itself was extremely painful…[l]ater that day, my left shoulder was throbbing, hot, painful, and I was unable to move my arm without severe pain." Ex. 6 at 1. Petitioner also states that the medical record from November 2, 2018 noting shoulder pain for two weeks is incorrect. Petitioner instead claims he told his provider that he was experiencing pain for "a few weeks," rather than only beginning two weeks before the visit. Ex. 6 at 2.

### IV.    Parties' Arguments

Petitioner requests that I issue a ruling finding that he is entitled to compensation in this case. Mot. at 1. He avers that he meets the requirements for a SIRVA as described in the Vaccine Injury Table, and thus is entitled to a presumption of causation. Mot. at 4-5. Respondent argues that Petitioner has failed to show he suffered a Table claim because onset of his pain was not within 48 hours of his vaccination. Opp. at 5-6. Respondent also argues that Petitioner's shoulder pain was not limited to his left shoulder, maintaining that the medical records establish that he experienced "radiating pain down the left arm". *Id.* at 6.

### V.    Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[6] a petitioner must establish that she suffered an injury meeting the Table criteria, in which

---

[6] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

> (ii) Pain occurs within the specified time frame;

> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the

Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

The United States Court of Federal Claims has also recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

**A. Factual Findings Regarding QAI Criteria for Table SIRVA**

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

**1. Petitioner has no Prior Left Shoulder Condition or Injury**

The first requirement under the QAIs for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Respondent has not contested that Petitioner meets this criterion, and I find that he has demonstrated a lack of history of pain, inflammation, or dysfunction of his left shoulder that would explain his symptoms. *See* Ex. 2 at 15-25 (records from the period prior to Petitioner's vaccination that include no history of prior shoulder pain).

**2. Onset of Petitioner's Injury was within Forty-eight Hours of his Flu Vaccination**

The following finding of fact is based on a complete review of the record, including all medical records, affidavits, and additional evidence filed:

- Petitioner received a flu vaccination in his left shoulder on October 8, 2018. Ex. 1 at 5.

- Petitioner's affidavit states that the vaccine itself was "extremely painful…[l]ater that day, my left shoulder was throbbing, hot, painful, and I was unable to move my arm without severe pain." Ex. 6 at 1.

- On November 2, 2018, Petitioner complained of left shoulder pain. Ex. 2 at 14. Dr. Zucconi's notes indicate that Petitioner affirmatively linked his shoulder pain to the flu vaccine, noting that his shoulder had been a problem "following a flu vaccine". Dr. Zucconi also recorded that the vaccine administrator stated it was "common to hit the bone…." *Id.* at 14. Petitioner exhibited reduced range of motion, stiffness, and was assessed with possible impingement. *Id.* at 15.

- Petitioner reported continued shoulder pain on April 30, 2019, noting it "[m]ay have been from a flu injection in bursal area." Ex. 2 at 9.

Respondent cites to the 25 days before Petitioner sought medical treatment for his shoulder pain, and the notation that his shoulder "has been a problem for the last two weeks". Opp. at 5. If correct, this would put onset of Petitioner's shoulder pain at approximately two weeks after his vaccination, rather than within 48 hours. Respondent also notes that Petitioner did not submit any additional affidavits or other evidence to support his onset allegations. *Id.*

Respondent's objection is reasonable but ultimately unpersuasive, given the totality of the evidence. First, the records show that Petitioner sought treatment in a relatively timely manner (*i.e.* less than a month after vaccination). It is common for a SIRVA petitioner to delay seeking treatment, thinking the injury will resolve on its own, since patients are often told by medical providers at the time of vaccination to expect some soreness and pain for a period of time after. Here, however, the delay was not appreciably long – and the fact that treatment was sought in a relatively short timeframe is somewhat supportive of a close-in-time onset.

Second, Petitioner also affirmatively linked his shoulder pain to the flu vaccine on November 2, 2018, noting that his shoulder had been a problem "following a flu vaccine". Ex. 2 at 14. This reporting provides additional support for onset, although it is not by itself particularly robust proof. Other subsequent medical records also corroborate the contention that Petitioner's pain began within 48 hours of vaccination. *See* e.g., Ex. 2 at 14 (stating shoulder pain "following a flu vaccine"); *id.* at 9 (noting shoulder pain "[m]ay have been from a flu injection in bursal area."). Finally, however, there is the Dr. Zucconi record – and although Respondent correctly notes its ambiguous character, Petitioner has (in his affidavit) proposed it is in error, and that in fact he informed this treater that he had been experiencing shoulder problems for "a few weeks" – not for two weeks prior. Ex. 6 at 2. I find Petitioner's interpretation to be reasonable, and not inconsistent with the overall record.

Accordingly, and based upon the above, I find there is preponderant evidence which establishes the onset of Petitioner's left shoulder pain was more likely than not immediate, and thus within 48-hours of vaccination.

### 3.  Petitioner's Pain was Limited to his Left Shoulder

I also find that there is a preponderance of evidence that Petitioner's pain was limited to his left shoulder. The following finding of fact is based on a complete review of the record, including all medical records, affidavits, and additional evidence filed. Specifically, I highlight the following:

- Petitioner complained of left shoulder pain and reduced range of motion on November 2, 2018. Ex. 2 at 13-15.

- Petitioner again complained of left shoulder pain on February 5, 2019. Ex. 2 at 10-12.

- On February 13, 2019, Petitioner had an MRI of his left of that shoulder. Ex. 2 at 47.

- On April 30, 2019, Petitioner complained of left shoulder pain, indicated he was having trouble lifting his arm. Ex. 2 at 8-10. At that time he underwent arthrocentesis of his left shoulder. *Id.* at 10.

- Petitioner stated he continued to have minor left shoulder pain on December 23, 2019, and was assessed with left shoulder pain and bursitis. Ex. 7 at 29-31.

Based on the above medical entries, the preponderance of the evidence supports a finding that Petitioner's injury was more likely than not limited to his left shoulder. Petitioner's records consistently report shoulder pain and loss of range of motion, which are specific and consistent with other SIRVA cases. Petitioner's medical procedures were also limited to his left shoulder. Although there is a reference to pain radiating down Petitioner's left arm in one record (Ex. 2 at 9), the majority of other records support a finding that Petitioner's pain was limited to his left shoulder.

Accordingly, preponderant evidence establishes that Petitioner's pain was limited to his left shoulder.

### 4.  There is No Evidence of Another Condition or Abnormality

The last QAI criteria for a Table SIRVA states that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent has not contested that Petitioner meets this criterion, and I there is no evidence in the record to the contrary.   Thus, the record contains preponderant evidence establishing that there is no other condition or abnormality which would explain the symptoms of Petitioner's right shoulder injury.

**B.  Other Requirements for Entitlement**

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly in his left shoulder on October 8, 2018 in New Jersey. Ex. 1 at 5; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 6 at 2; Section 11(c)(1)(E) (lack of prior civil award).

As stated above, I have found that the onset of Petitioner's right shoulder pain was within 48 hours of vaccination. *See* 42 C.F.R. § 100.3(c)(10)(ii) (setting forth this QAI requirement). This finding also satisfies the requirement that Petitioner's first symptom or manifestation of onset occur within the time frame listed on the Vaccine Injury Table. 42 C.F.R. § 100.3(a)(XIV)(B) (listing a time frame of 48 hours for a Table SIRVA following receipt of the influenza vaccine). Therefore, Petitioner has satisfied all requirements for a Table SIRVA.

The last criteria which must be satisfied by Petitioner involves the duration of his SIRVA. For compensation to be awarded, the Vaccine Act requires that a petitioner suffer the residual effects of his or her left shoulder injury for more than six months. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). The records demonstrate, and Respondent does not contest, that Petitioner suffered the residual effects of his shoulder injury for more than six months. *See*, *e.g.*, Ex. 2 at 7; Ex. 7 at 29-31. Thus, this requirement is also met.

Based upon all of the above, Petitioner has established that he suffered a Table SIRVA. Additionally, he has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## VI.    Damages

The parties have also briefed damages in this case, which is limited to pain and suffering. Mot. at 9 n.2. Petitioner requests an award of $80,000.00 for pain and suffering. Mot. at 9; Reply at 3. Respondent proposed an award of $38,000.00. Opp. at 11.

## A.  Legal Standards for Damages Awards

In several recent decisions, I have discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within the SPU. I fully adopt and hereby incorporate my prior discussion in Sections III and IV of *Leslie v. Sec'y Health & Hum. Servs*., No. 18-0039V, 2021 WL 837139 (Fed. Cl. Spec. Mstr. Jan. 28, 2021) and *Johnson v. Sec'y of Health & Hum. Servs.,* No. 18-1486V, 2021 WL 836891 (Fed. Cl. Spec. Mstr. Jan. 25, 2021), as well as Sections II and III of *Tjaden v. Sec'y of Health & Hum. Servs.,* No. 19-419V, 2021 WL  837953 (Fed. Cl. Spec. Mstr. Jan. 25, 2021).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[7]

## B.  Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed, leaving only the severity and duration of that injury to be considered. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, all medical records, affidavits, plus all filings submitted by both Petitioner and Respondent. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

Citing five prior damages determinations, Mr. Clendaniel requests an award of $80,000.00 for pain and suffering. Mot. at 6-9.[8] He asserts that the severity of his injury

---

[7] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

[8] The cases cited are *Attig v. Sec'y of Health & Hum. Servs.*, No. 17-1029V, 2019 WL 1749405 (Fed. Cl. Spec. Mstr. Feb. 19, 2019) (awarding $75,000.00 for pain and suffering); *Marino v. Sec'y of Health & Hum. Servs.*, No. 16- 622V, 2018 WL 2224736 (Fed. Cl. Spec. Mstr. Mar. 26, 2018) (awarding $75,000.00 for pain and suffering); *Kim v. Sec'y of Health & Hum. Servs.*, No. 17-418V, 2018 WL 3991022 (Fed. Cl. July

is comparable to the aforementioned SIRVA cases, and that he underwent treatment comparable to the petitioners in *Attig* and *Marino*. *Id.* at 8-9. In particular, Petitioner emphasizes that he underwent an MRI, two cortisone injections, two arthrocentesis procedures, and overall required treatment for fourteen months. *Id.* Further, in his reply, Petitioner states that his treatment is more comparable to the petitioners in two additional cases: *Knauss v. Sec'y of Health & Hum. Servs.*, No. 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. July 20, 2018) (awarding $60,000.00 for pain and suffering); and *Dagen v. Sec'y of Health & Hum. Servs.*, No. 18-0442V, 2018 WL 7187335 (Fed. Cl. Spec. Mstr. Nov. 6, 2018) (awarding $65,000.00 for pain and suffering).

Respondent, by contrast, submits that an award of $38,000.00 is appropriate for pain and suffering. Opp. at 11. Respondent notes that Petitioner's course of treatment was intermittent and did not involve prolonged therapy or invasive treatments such as surgery. *Id.* at 3. Respondent cites to *Ramos v. Sec'y of Health & Hum. Servs.*, No. 18-1005V, 2021 WL 2182720 (Fed. Cl. Spec. Mstr. Jan. 4, 2021) in which petitioner received $38,000.00 for pain and suffering.

Based on the medical records, Petitioner suffered a mild SIRVA that responded well to treatment. Petitioner initially reported significant pain, 8 out of 10 on November 2, 2018 (ex. 2 at 14), and periodically reported pain at various intervals thereafter for the next eight months. Ex. 2 at 12 (reporting pain level of 7 out of 10 on February 5, 2019); ex. 2 at 9 (reporting pain and limited mobility on April 30, 2019); ex. 2 at 7 (reporting on June 28, 2019 that Petitioner recently began to feel pain again). However, the time between those intervals Petitioner experienced little to no pain, and the various therapies (steroid injections and arthrocentesis) apparently provided significant relief, resulting in long periods of no treatment. The records therefore show that Petitioner's pain was not particularly, or at least not consistently, severe. Additionally, an MRI completed on February 13, 2019 revealed mild tendinosis and bursitis but no evidence of a rotator cuff tear. *Id.* at 47. I recognize that Petitioner reported continued pain as of December 23, 2019, but this was characterized as minor and controlled with ibuprofen. Ex. 7 at 30. These factors indicate that Petitioner's SIRVA was mild to moderate.

Further, Petitioner's treatments were also not extensive or particularly invasive. He had two cortisone injections and two arthrocentesis procedures. Ex. 2 at 8, 10. However, he did not have surgery or attend any physical therapy.

The overall severity of the injury at issue herein is not high enough to warrant the $80,000.00 requested by Petitioner in his motion. However, I also note that the SIRVA

---

20, 2018) (awarding $75,000 for pain and suffering); and *Bordelon v. Sec'y of Health & Hum. Servs.*, No. 17-1892V, 2019 WL 2385896 (Fed. Cl. Spec. Mstr. Apr. 24, 2019).

decision cited by Respondent, *Ramos*, 2021 WL 2182720, is distinguishable. There, the petitioner waited approximately four months to report his injury, and his treatment consisted only of physical therapy. *Id.* at 3-4. The overall facts of this case in comparison suggest a more severe, but still mild, injury, and hence a higher pain and suffering award.

The facts in this case are most analogous to the cases cited by Petitioner in his reply, specifically *Knauss* (awarding $60,000.00 for pain and suffering). Reply at 2-3. As here, the petitioner in *Knauss* suffered a mild SIRVA, and the treatment was not extensive or invasive, consisting of a cortisone injection and physical therapy over seven months. Further, there were long periods where the petitioner in *Knauss* did not seek treatment. *Knauss*, 2018 WL 3432906, at *7. While Petitioner did not attend any physical therapy, he did have additional treatments such as several cortisone injections and two arthrocentesis procedures. The above differences support a somewhat comparable award for Petitioner's pain and suffering in the present case.

### VII.    Conclusion

**In view of the evidence of record, I find that there is preponderant evidence that the onset of Petitioner's injury, specifically shoulder pain, was within 48 hours of his vaccine and his pain was limited to his left shoulder. Further, based on the evidence of record, I find that Petitioner is entitled to compensation.**

I also find that, for all of the reasons discussed above and based on consideration of the record as a whole, **$60,000.00 represents a fair and appropriate amount of compensation for Mr. Clendaniel's actual pain and suffering.**[9]

**IT IS SO ORDERED.**

s/Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[9] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* § 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).